IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

Filed at _____ 3:00 P.M
_____ 8/11 _____, 20 20
Deputy Clerk, U.S. District Court
Middle District of Georgia

UNITED STATES OF AMERICA

    Plaintiff,

V.

CHRISTOPHER WHITMAN

    Defendant, Petitioner,

_____ /

Case No. 1:14-CR-1-1-(WLS)
1:19-CV-183-(WLS)

**EMERGENCY MOTION FOR RESENTENCING
PURSUANT TO 18 U.S.C. § 3582 (c)(1)(A),
18 U.S.C. § 4205(g) AND THE FIRST STEP ACT**

    Defendant, Christopher Whitman ("Mr. Whitman") hereby submits this Emergency Motion for Sentence Modification and respectfully requests that the Court modify Mr. Whitman's sentence to allow him to serve the remainder of his sentence under supervised release.

    Mr. Whitman submitted his request for compassionate release to the warden of FCI Coleman-LOW via the Trulinc's inmate email system. To date Mr. Whitman has not been afforded a response by Warden Lane. **See Ex. 1.**

    At least one other court has decided that the email system, which provides a time/date stamp, is an appropriate path to "submi[t] to the warden" his/her request. In **United States v. Head**, 2:08-CR-00093-KJM-2 (E.D. CA. 2020), the court determined that **Head's** email was a request to the warden for compassionate release.

    A prerequisite to the defendant filing a request for compassionate release is that the BOP had the opportunity to commence the proceedings. Thus, because a prisoner files, the statute requires the defendant to either: 1) fully exhaust all administrative rights to appeal the Bureau's failure

Page 1 of 10

to file; **or**

2) allow the lapse of 30 days from the warden's receipt of a compassionate release request,

"Whichever is earlier." 18 U.S.C. § 3582(c)(1)(A),

The defendant contends that release to home confinement is warranted by the COVID-19 outbreak among the BOP's facilities. Mr. Whitman is 54 years old and has medical conditions that place him at significant risk of developing a serious or terminal illness if he contracts COVID-19 while in custody.

Mr. Whitman is currently awaiting this Court's ruling on his § 2255 Motion and he respectfully requests that if his section 2255 motion is granted and the Court either orders his sentence vacated, orders a new trial, or new sentence that he be placed on home confinement. A courts decision whether to release or deny a section 2255 petitioner pending the outcome of an appeal is guided by Federal Rule of Appellate Procedure 23(c). **Hilton v Braunskill**, 481 U.S. 770, 772, 95 L.Ed.2d. 724 (1987); **United States v. Mett**, 41 F.3d. 1281, 1282 (9th Cir. 1995), stating that petitioner should apply first to the district court for release pending appeal. Mr. Whitman believes this motion would also serve as that application as well.

### The COVID-19 Pandemic and Mr. Whitman's Medical Conditions

The United States leads the world in confirmed cases of COVID-19 with over 3,500,000 confirmed cases and a death toll of over 138,000, as of this writing. The World Health Organization and the CDC has warned that certain people are at a higher risk of developing serious, potentially fatal illness from COVID-19, specifically older people and "people of all ages with underlying medical conditions, particularly if not well controlled," including people with respiratory problems like Mr. Whitman's. COVID-19 has also been found to cause acute respiratory symptoms and other dangerous conditions,

Experts warn that COVID-19 can create extensive and permanent damage to the lungs. Those medical conditiona put Mr. Whitman at a higher risk of developing a serious or terminal illness if he contracts COVID-19. Mr. Whitman's BMI "Body Mass Index" has also been calculated at 33.91. Obesity weakens all of the bodily functions and increases the risk of developing other disorders. COVID-19 is a "new virus" with no immune symptom defense agents, including a weak body.

Mr. Whitman worked for 17 years at Coats and Clark in Albany, Ga, where he was subject to 8 hours or more a day of textile industrial asbestos dust and coal dust. Mr. Whitman developed a chronic cough from years of breathing this dust. **Pneumoconioses** are fibrotic lung disease caused by the inhalation of coal dust and various inert, inorganic, or silicate dusts.

A) Coal Workers Pneumoconioses is the ingestion of inhaled coal dust leading to the formation of coal macules in the upper lung.

B) Asbestosis is a nodular intestinal fibrosis occuring in asbestos workers and miners.

C) Industrial Bronchitis is found in coal workers and others exposed to cotton, flax, or hemp dust.

D) Byssinosis is an asthma-like disorder in testile workers caused by the inhalation of cotton dust. Repeated exposure leads to chronic bronchitis.

### COVID-19 is Present at Coleman-LOW

There have been reported cases of staff and inmates in Dorm "C". As of this filing 2 inmates have been removed from Dorm B-1 where Mr. Whitman resides.

**Spectrum Bay News 9 of Tampa** reported last Friday [07/09, 2020] that FCC Colman correctional officers union officials say that coronavirus cases among both inmates and staff increased at the Four Coleman facilities last

week, and that the reality is "much higher" than what is reported. Union vice president **Jose Rojas** complained to the news channel because the BOP does not test everyone, "your walking into a mine full of bombs not knowing who is positive and who is not." Rojas said that with growing concern over asymptomatic carriers, the union is now considering setting up a testing site for Coleman staff. He told the Miami Herald that "two officers were working while positive with the virus."

Mr. Rojas is the Southeast Regional Vice President of the Counsel of Prison Locals and one of the most reliable sources someone can have in the BOP.

Despite thousands of coronavirus cases reported in prisons across the United States, the Bureau of Prisons has implemented a new policy, barring inmates from speaking out publicly about health conditions. That would be a First Amendment violation of the Constitition.

Mr. Whitman asks this Court to take notice of the following:

### Federal Rules of Evidence 201(b)(2)

Mr. Whitman respectfully requests this Court to take judicial notice of the Bureau of Prisons' website, www.bop.gov. See **FRE 201(b)2)**. The BOP's website purports to report the total number of actual COVID-19 cases currently at FCI Coleman-LOW where Mr. Whitman resides.[Fn. 1] Because the BOP's website's "accuracy cannot reasonably be questioned," **FER 201(b)(2)**, and "[a]bsent some reason for mistrust, the courts have not hesitated to take judicial notice of agency reports[,]" **Dimanche v. Brown**, 783 F.3d. 1204, 1213 n. 1 (11th Cir.

---

Fn. 1

Disturbingly, Florida has reported breaking numbers in positive COVID-19 cases and "the COVID-19 case rate for prisoners was 5.5 times higher than the U.S. population case rate." **Journal of the American Medical Association**, COVID-!9 Cases and Deaths in Federal and State Prisons— Brendan Sabner, Ph.D., et al. (July o8, 2020). However, FCI Coleman-LOW has not administered COVID-19 tests to the majority of its inmates.

2015) (citing **Tennebonne v. Blackburn**, 646 f.2d. 997, 1000 n.4 (5th Cir. 1981)). Mr. Whitman requests the Court take judicial notice of the BOP's website.

The only way for Mr. Whitman to protect himself from this inevitable physical "punishment by virus" is a Compassionate Release due to Extraordinary and Compelling Circumstances. Please understand that the reported cases of infection at the FCI Coleman-LOW Complex have skyrocketed in the last week. Specifically, at the low-security facility where Mr. Whitman is housed.

### Extraordinary and Compelling Reasons

Congress has expressly intended to ensure that federal district courts had the authority and power to prevent inequity and injustice whenever extraordinary and compelling reasons exist to do so. However, Congress did not define the terms "extraordinary" and "compelling". Congress left that task to the United States Sentencing Commission. First, for the Commission to provide definitions by example, and then more precise meaning. **United States v. Spears**, 2019 U.S. Dist. LEXIS 177991 (D. Ore. 2019). A task that the effectively defunct Commission did not complete. That truncated process requires us to turn to existing jurisprudence for a definition. **Id.**

### Extraordinary

American post-conviction jurisprudence has long recognized that unintended consequences and unforeseen events generate extraordinary circumstances requiring exceptional procedures (i.e., exceptions to general rules) in order to avoid unwanted and unjust results. See e.g., **United States v. Morgan**, 346 U.S. 502 (1954)(coram nobis); **Murry v. Carrier**, 477 U.S. 478 (1986)(equitable exception); **United States v. Peter**, 310 F.3d 709 (11th Cir. 2002)(coram nobis).

From our survey of both Supreme Court jurisprudence, and the

district court's interpretation of the First Step Act's amendment of § 3582(c)(1)(A), we conclude that the boundary of the extraordinary encompasses events either beyond the control of both defendant and the court, or beyond the foreseeability of the sentencing court, or a combination of both. And as always those also including circumstances where an actually innocent individual has been imprisoned.

Finally, on occasion, extraordinary may mean unique or odd, but usually it involves when an "external obstacle" beyond a person's control "stood in [its] way" of a fair opportunity to be heard. **Menominee Indian Tribe v. United States**, 136 S. Ct. 750, 756 (2016)(describing extraordinary in the equitable tolling context). An extraordinary circumstance is one that impedes a claimant's opportunity to have the merits of his request decided.

### Compelling

Separately, compelling means not only emotionally unfair, but also disparate treatment of similarly-situated individuals. See, e.g., **Dell v. United States**, 710 F.3d 1267 (11th Cir. 2019)(Martin J. concurring)("We cannot explain to the public or Mr. Dell's family why the rules prevent him but not his more culpable co-defendant from returning home sooner."); **Martin v. Franklin Capital Corp.**, 546 U.S. 132, 139 (2005)(an example of compelling is a violation of a "basic principal of justice [such as] like cases should be decided alike.").

Currently, we believe that there are four rare scenarios that occur frequently enough to be identified as extraordinary and compelling:

1. When ordinary prison conditions have a substantial adverse effect on a prisoner's health,

2. a sentence which the law required a court to impose, Congress has subsequently determined as inherently unjust,

3. the classic extraordinary circumstance is a miscarriage of justice where an actually innocent individual has been imprisoned, and

4. when a substantial change in the socio-economic environment or an Act of God requires a reassessment of the costs of imprisonment and a reevaluation of the punishment in relation to the four primary penological purposes.

The hallmarks of these circumstances: events beyond the control of individual seeking relief, and either harsher than the anticipated punishment, or, punishment that is fundamentally different than what others experience for the same misconduct.

We now turn this particular petition, and describe the extraordinary and compelling circumstances that warrant a compassionate remedy:

> The overpopulated and under-resourced prison poses unanticipated health risks, the seriousness of which the COVID-19 pandemic increases: confined, communal living conditions that are not only health threatening, but also life threatening, especially for prisoners suffering from the specific health conditions named in CDC guidance as deadly when combined with COVID-19.

### Health Conditions and COVID-19

Federal prisons are significantly overcrowded and under-resourced. See, e.g., **Testimony of Bureau of Prisons Director Kathleen Hawk-Sawyer before the United States Senate** (November 2019); **United States Sentencing Commission Report on Compassionate Release** (2016). By further example, on any given day for most of the day, the Federal Prison Complex in Coleman, Florida has no M.D. or D.O. medical personnel on duty. To exacerbate this problem, even the paramedical personnel are not present for a significant portion of the time.

Making matters worse, medical treatment of prisoners leaves much to be desired. A prisoner will be "black-boxed" during transport to a hospital, and will be chained to the hospital bed. Once there, he will receive treatment that restrict his movements to the point of trauma, and treatment that aggravates the immune systems that are needed to combat a COVID infection. These are particularly onerous limitations in the current

environment, given the constant vomiting and diarrhea that accompanies full-blown COVID-19. Furthermore, in the best of times, communications between the prison health system and the medical providers is notoriously substandard – (i.e., regular mis-routing of prisoner-patients, under-prescribing of drugs, prescribing incompatible or incorrect medicines, etc.) – making inconsistent treatment common.

All of which make more poignant the statements of the Attorney General and a host of other officials. For example, on March 23, 2020, a bipartisan group of 14 United States Senators urged the state DOC's, as well as the federal Bureau of Prisons, "to take the necessary step" to protect the "most vulnerable" inmates. On March 13, 2020, President Trump noted, in declaring a state of emergency, that the First Step Act empowers the BOP to help the prisoners most at risk from the virus.

These concerns provided the impetus for Attorney General Barr to issue a directive to the BOP to more aggressively use home confinement and compassionate release to alleviate the current crisis. **Operations Memorandum** (March 26, 2020). And presumably to protectively improve future conditions in order to avoid aggravating the current crisis further and preventing a future crisis. **Id.**

Living in Coleman-LOW, Mr. Whitman is housed in an old, poorly maintained building in one of four dorms built to hold 128 inmates that currently house 174 men. The building is kept at a temperature of 66-67 degrees. From a security standpoint it makes sense because it reduces the activity at night because the only way to stay warm is in bed. But from a health basis, it aggravates respiratory problems, the cool is constantly recirculated. Black mold is all throughout the shower area as well as the air system. Black mold spores are discharged into the air constantly. The

men suffer from the "Coleman Crud" a respiratory reaction to the black mold spores.

It is an established medical fact that black mold is very detrimental to your respiratory system. The combination of Mr. Whitman's medical issues along with the black mold spores and the risk of contracting COVID-19 is a very dangerous prognosis.

Resentencing Mr. Whitman to home confinement would also be consistent with the criteria identified in the BOP's guidance from April 22, 2020. The BOP's guidelines list factors for considering inmates for home confinement, including that: 1) the primary or prior offense is not violent, a sex offense, or related to terrorism; 2) the inmate has no detainers; 3) the inmates mental health care level is less than CARE-MH4; 4) that the inmate has a minimum PATTERN Risk Score; 5) the inmate has no incident reports in the past 12 months; 6) the inmate is a United States citizen; 7) the inmate has a viable relapse prevention plan.

Mr. Whitman meets these criteria and has a viable relapse prevention plan. Mr. Whitman will be returning to his wife of 34 years Becky Whitman to their residence they have shared at 3729 Ga Hwy 33 South Sylvester, Ga 31791, for 27 years. While in custody Mr. Whitman obtained his Bachelor's Degree in Ministry and is currently 6 credit hours away from his Masters diploma in Ministry. Mr. Whitman plans to obtain a position in the Ministry.

Also as this Court knows, Mr. Whitman went to trial. Harvard Law Professor Alan Dershowitz wrote "when is a Constitutional right not a right?" and then answers "when you are punished because of it". If the government arrests you and fines you for something you say, everyone recognizes a violation of the First Amendment, even though you had your say. Yet when prosecutors and courts inpose massive punishments on criminal defendants for

exercising their Sixth Amendment right to trial by jury, it's considered business as usual. Sadly Mr. Whitman was punished by his own attorneys' as seen in his civil case No. 1:19-CV-183-(WLS). Also of note is the differences in prosecuting different cases as seen in the case relating to **Mercer Transportation** Case No. 1:13-CV-108-(LJA) in which the government alleges that **Mercer** had actual knowledge of the bribery scheme. This is a case of prosecuting disparity.

## Conclusion

In conclusion, petitioner/defendant Christopher Whitman, a non-violent offender is at risk of suffering serious medical issues up to and including possible death if he contracts COVID-19, respectfully requests a modification to his sentence or an early release pursuant to Compassionate Release or transfer to home confinement pursuant to the CARES Act, and for any other relief this Court may deem proper in this premise.

Respectfully submitted this 3rd day of Aug, 2020.

By: _____

Christopher Whitman #97202-020
Federal Correctional Complex - LOW
P.O. Box 1031   Unit B-1
Coleman, Florida 33521-1031
Proceeding, Pro se

## VERIFICATION

Under penalty of perjury, pursuant to 28 U.S.C. § 1746, I declare that the factual allegations contained herein are true and correct to the best of my knowledge.

*Christopher Whitman*

## CERTIFICATE OF SERVICE

This motion was delivered in a pre-addressed, postage-paid envelope to the prison mailing authorities on the same day as signed. All parties to this case including the United States of America are registered with the CM/EFC docketing system, therefore Petitioner is requesting that notification regarding this motion occur through that system's electronic medium.

Motion Mailed to:
U.S. District Court
Middle District of Georgia
Albany Division
210 W. Broad Ave
Albany, Ga 31701-2566

Christopher Whitman #97202-020
Federal Correctional Complex - LOW
P.O. Box 1031   Unit B-1
Coleman, Florida 33521-1031

TRULINCS 97202020 - WHITMAN, CHRISTOPHER - Unit: COL-B-A

---

FROM: Warden LOW
TO: 97202020
SUBJECT: RE:***Inmate to Staff Message***
DATE: 07/06/2020 10:17:04 AM

**Your request must be submitted to your unit team.** Once all documents are submitted, your Unit Team will process your request.**

\>\>\> ~^!"WHITMAN, ~^!CHRISTOPHER" <97202020@inmatemessage.com> 7/3/2020 5:49 PM \>\>\>
To: Warden Lane
Inmate Work Assignment: B-1 orderly

Warden Lane,
This is my formal request for compassionate release pursuant to 3582(C)(1)(A). I am 54 years old and I have a BMI of 33.91 which according to the CDC puts me at risk of contracting COVID-19. I have no violent history nor do I pose a threat to anyone. My address will be 3729 Ga. Hwy 33 South Sylvester Ga. 31791. My wife Becky Whitman, can be contacted at 229-349-0517.
Thank you,
Christopher Whitman
97202-020

*No Response from Unit team*