**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER WHITMAN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **Criminal Case No.** |
| **v.** | ) | **1:14-CR-1-1 (WLS)** |
| | ) | |
| | ) | **28 U.S.C. § 2255 Case No.** |
| **UNITED STATES OF AMERICA,** | ) | **1:19-CV-183 (WLS)** |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**UNITED STATES' RESPONSE TO PETITIONER'S SUPPLEMENTAL
MEMORANDUM OF LAW IN SUPPORT OF 28 U.S.C. § 2255 MOTION**

The United States respectfully files its response to petitioner's Supplemental Memorandum in support of his 28 U.S.C. § 2255 motion. Dkt. 489. As before, Whitman has failed to demonstrate that his defense counsel's performance was constitutionally deficient—outside the wide range of reasonable professional assistance—and that he was prejudiced by counsel's alleged deficient performance. Nothing in Whitman's latest filing changes that fact. Accordingly, petitioner's motion should be denied in its entirety without an evidentiary hearing.

## I.      PROCEDURAL BACKGROUND

Whitman filed his *pro se* motion to vacate his conviction on October 28, 2019. Dkt. 450. The United States filed its response in opposition on December 23, 2019, Dkt. 454, and petitioner filed his reply on April 23, 2020. Dkt. 466. As such, this matter was ripe for decision as of April 2020.  Notwithstanding this fact, Whitman retained counsel seven months later in November 2020, which sought leave of Court to file an additional brief on Whitman's behalf. Dkt. 477. The Court granted petitioner's request, in-part, over the government's objection, *see* Dkt. 478, limiting any

new briefing only to claims for relief that were previously raised by petitioner. Dkt. 479. On March 3, 2021, Whitman filed his Supplemental Memorandum. Dkt. 489.[1] Pursuant to the Court's Order, briefing is now complete, 17 months after Whitman filed his motion.

## II.   WHITMAN'S CLAIMS

Petitioner's latest filing distills his original claims of ineffective assistance of counsel down to three: (1) trial counsel's alleged failure to properly prepare for trial, (2) trial counsel's alleged ineffective representation at sentencing, and (3) alleged conflicts of interest concerning his trial/appellate counsel and other counsel. Dkt. 489 at 8. As discussed below, none of petitioner's claims have merit. Moreover, the second claim alleging errors by trial counsel at sentencing is new and thus, should not be considered by the Court. *See* Dkt. 479.

Petitioner has also submitted a report from a purported legal ethics expert in support of his claims of ineffective assistance of counsel, which offers four separate legal opinions. *See* Dkt. 489 at 16-20, Ex. 12. These opinions, however, are based on incorrect facts and assumptions. As such, they should be disregarded by the Court.

Pursuant to the Court's December 1, 2020 Order (Dkt. 479), petitioner is deemed to have withdrawn all grounds for relief not reasserted in his supplemental briefing. Because Whitman has failed to reassert his previous claims of ineffective assistance of counsel pertaining to alleged jury tampering (Dkt. 450 at 25-26), ineffective assistance of counsel on appeal (Dkt. 450 at 26-27), and his claims of due process and right to counsel violations (Dkt. 450 at 28-29) in his Supplemental Memorandum, they are deemed withdrawn. Because these claims have been withdrawn by petitioner, they are not discussed in the government's response below.

---

[1] The complete factual and procedural background is detailed in the government's original response in opposition to petitioner's motion, *see* Dkt. 454 at 2-4, and is incorporated by reference herein.

### III.    LEGAL STANDARD

The standard for weighing a claim of ineffective assistance of counsel is the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this standard, a movant must show both that (1) his counsel's performance was deficient, and (2) his counsel's deficient performance prejudiced the defense. *Id.* at 687. The court need not address both parts of the inquiry if an insufficient showing is evident on either of them. *Id.* To demonstrate that a counsel's performance was deficient, the defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To establish prejudice, the defendant must show that the "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

Review of counsel's performance for constitutional deficiency is conducted based on an objective standard of reasonableness. The court's review "must be highly deferential," and view the attorney's "conduct from counsel's perspective at the time," rather than viewing counsel's choices with the benefit of hindsight. *Id.* at 689. The court begins its review with a "strong presumption" that the conduct of counsel fell "within the wide range of reasonable professional assistance." *Id.* The defendant bears the burden of demonstrating to the court that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*).

The defendant must also demonstrate his defense was prejudiced by his attorney's performance. Prejudice is sufficiently proved when the defendant can "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Courts evaluate prejudice in view of the totality of the evidence, rather than any alleged error in isolation. *Id.* at 695-96.

IV.     **LEGAL ARGUMENT**

A.     **Whitman's Claim that Defense Counsel was Ineffective for Lack of Preparation is Without Merit**

Despite overwhelming evidence to the contrary, Whitman claims that his trial counsel was constitutionally deficient for failing to prepare for trial by failing to argue that his client was guilty of gratuity. Whitman fails under both prongs of *Strickland*, due to his inability to show (1) deficient performance by trial counsel and (2) no prejudice towards his ultimate guilty verdict.

When an ineffective assistance claim rests on a failure to investigate, reasonableness is assessed with a "heavy measure of deference to counsel's judgments." *Strickland*, 446 U.S. at 691; *see also Chandler*, 218 F.3d at 1318 n.22. *Strickland* claims for failure to investigate recognize the reality that trial counsel "do not enjoy the benefit of endless time, energy or financial resources." *Rogers v. Zant*, 13 F.3d 384, 387 (11th Cir. 1994). After a court has "conclude[d] that declining to investigate further was a reasonable act, [courts] do not look to see what a further investigation would have produced." *Id.* at 388. "If the act of conducting no investigation of a particular defense is reasonable, the matter is closed." *Id.*

Whitman first claims that defense counsel, specifically Ed Garland, failed to prepare for trial because he was purportedly "[h]oping the case would be resolved by plea agreement." Dkt. 489 at 20, Dkt. 450 at 22-23. However, petitioner has failed to identify any facts in the record to support this baseless allegation and no evidentiary hearing would remedy this defect. As the record reflects, Mr. Garland and his colleagues provided zealous advocacy on Whitman's behalf— advocacy that extended from pre-indictment investigations to trial, sentencing, and appeal. Indeed, defendant was represented by well-regarded and seasoned criminal defense attorneys, including not only Mr. Garland, but also Donald F. Samuel, Matthew D. Daley, John A. Garland, Robert M. Margeson III, and Leigh Ann Flynn throughout the proceedings.

Prior to petitioner's indictment, counsel was successful in lobbying the government against filing criminal charges against Whitman's wife, Becky Whitman, and in obtaining a reverse proffer from the government in which it disclosed the damning evidence it intended to present at trial. Defense counsel then negotiated a plea with the government to a single count of bribery, which would have capped Whitman's exposure at 15 years—an offer that Whitman rejected. Following indictment, Whitman's defense counsel successfully argued against pre-trial detention, and subsequently provided steadfast advocacy throughout the proceedings, including filing motions in limine (Dkt. 101, 115), followed by timely objections during petitioner's six-week trial. Defense counsel also took full advantage of cross-examinations to question the government's witnesses in detail and at length.

The gravamen of Whitman's claim of ineffective assistance of counsel for failure to prepare for trial rests on second-guessing trial counsel's decision not to argue gratuity as opposed to economic coercion/extortion. Dkt. 489 at 20-23. However, under the deferential standard owed to trial counsel under *Strickland*, Whitman's claim falls far short of that needed to establish ineffective assistance of counsel. With bribes totaling more than a million dollars, multiple cooperators testifying about the bribes they received in exchange for business, *see* Philpot's trial testimony, Dkt. 295 at 83, 90; Potts' trial testimony, Dkt. 298 at 247-48, and nearly $20 million of ill-gotten gains, Mr. Garland acted well within the zone of reasonableness to forego a defense based upon gratuity, when the facts did not support such a theory. Instead, defense counsel opted for a defense based on economic coercion, claiming that Whitman was extorted by base employees into making the subject payments. Faced with the mountain of evidence against his client and with limited defenses to such allegations, defense counsel no doubt hoped that an extortion defense would lead to jury nullification resulting in either an acquittal or a hung jury. Nevertheless,

Whitman claims that failing to argue gratuity until the charge conference rendered his counsel's representation constitutionally defective. That is simply not the case as Whitman himself concedes that, despite a finding of economic coercion, he still could have been convicted of either bribery or gratuity. Dkt. 489 at 21.

Whitman points to a request by Mr. Garland at the charge conference to include a gratuity instruction as indicia of constitutionally deficient representation. *See* Dkt. 489 at 21-23. But the fact that Mr. Garland chose not to argue gratuity when the overwhelming amount of evidence in the record pointed to bribery does not rise to the high bar of unreasonableness under *Strickland*. In fact, Mr. Garland's attempt to argue for such an instruction in the face of the evidence in the record is further testimony to the skill which he brought to his representation of petitioner.

Second, no prejudice occurred by foregoing a gratuity-based defense theory. On appeal, the Eleventh Circuit was clear: there was "little, if any evidence in the record of the payments being made as gratuit[ies]." *United States v. Whitman*, 887 F.3d 1240, 1245 (11th Cir. 2018) (quoting District Court). Further, petitioner now fails to provide needed explanations of how a gratuity defense would apply to the facts in this case. Even if the trial court had agreed to instruct the jury on gratuity, Whitman has failed to explain how this would have made a difference in the outcome of the trial given the overwhelming amount of evidence of bribery in the record.

Whitman was convicted of dozens of counts of wire fraud, theft and obstruction, which would not have been impacted by a gratuity conviction as opposed to one of bribery. Moreover, arguing a gratuity-based defense given the evidence would have been illogical and would have likely cost the defense credibility with the jury. How Mr. Garland spent his "inherently limited time and resources" is owed "great deference." *Chandler*, 218 F.3d at 1318 n.22. Because it was reasonable for Mr. Garland to not further investigate and argue a defense based on gratuity – a

defense unsupported by the facts of this case – the analysis ends: "[i]f the act of conducting no investigation of a particular defense is reasonable, the matter is closed." *Rogers*, 13 F.3d at 388.

**B.      Defense Counsel was not Constitutionally Ineffective at Sentencing**

In his original brief, petitioner's sentencing claim centered on the United States Sentencing Guidelines ("USSG") Amendment 790 and conclusory statements that § 1B1.3 was misapplied. Dkt. 450 at 24. Whitman's only support for this claim was unrelated and irrelevant indications of what other trucking companies had charged the government to purportedly determine the "value [it] received." *Id.* But at trial, the United States established that Whitman billed the government more than $37 million for the relevant four-year period, with more than $17 million of it derived from fraud. Whatever rates were charged by other trucking companies remained irrelevant to Whitman's sentencing. By failing to reassert these claims in his Supplemental Memorandum, Whitman has withdrawn his claim centered around Amendment 790 to the USSG and his meritless claim of the misapplication of 18 U.S.C. § 3553(a). *See* Dkt. 479 at 1 ("Any original ground for relief not briefed by Petitioner's counsel in the new brief shall be deemed to be withdrawn.").

Despite the Court's Order prohibiting petitioner from "add[ing] additional grounds for relief," *id.*, Whitman has raised two new ineffective assistance of counsel claims regarding sentencing, specifically that trial counsel failed to request a continuance of the sentencing hearing and concerning the calculation of the Specific Offense Characteristics. Dkt. 489 at 23-27. Both claims are barred by the Court's Order and thus, should not be considered.

1.      Counsel was not Ineffective for Failing to Request a Third Continuance

Petitioner's first new sentencing claim concerns trial counsel's alleged failure to request a continuance of the sentencing hearing. *Id.* at 23-26. Whitman cites to the 2014 Amendment 791 to USSG § 2B1.1(b)(1)(L), which would raise the financial threshold for a 22-level increase from

$20,000,000 to $25,000,000 as justification,[2] yet fails to note that there had already been *two* continuances of the sentencing hearing, the first of which was on motion by petitioner. Dkt. 198. Originally scheduled for sentencing on July 29, 2015 – more than three months before Amendment 791 was to take effect – defense counsel moved the Court to continue the sentencing hearing due to a conflict. The Court granted the motion and those of the two other defendants who were to be sentenced on the same date, resetting the hearing for August 12, 2015. Dkt. 202. The hearing was continued a second time on August 2, 2015, to September 10, 2015, for all three defendants. To argue that trial counsel's performance was constitutionally defective for not requesting a *third* continuance not only falls below the objective standard of reasonableness but strains credulity. Moreover, under the second prong of *Chandler*, there is no indication that the Court would have seriously entertained a motion for a third continuance to allow petitioner to run out the clock on then-existing Sentencing Guidelines as the defendant had been convicted more than six months prior to sentencing on March 3, 2015.

In order to demonstrate ineffective assistance of counsel at sentencing, the petitioner "must show both incompetence and prejudice: (1) petitioner must show that counsel's representation fell below an objective standard of reasonableness, and (2) petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Chandler*, 218 F.3d at 1312-13 (internal quotations omitted).

To support his claim petitioner relies solely on the D.C. Circuit's opinion in *United States v. Abney*, 812 F.3d 1079 (D.C. Cir. 2016). But to analogize the facts of *Abney* to Whitman's pushes beyond the imagination. In *Abney*, the defendant's sentencing for possession of crack cocaine took place less than a week after Congress approved the Fair Sentencing Act ("FSA"), with Presidential

---

[2] The PSR calculated the loss amount related to Whitman's crimes to be $21,296,655. Dkt. 214 at 13. The PSR was adopted by the Court at sentencing. *See* Dkt. 318 at 56-59.

approval "imminent and virtually assured." *Id.* at 1082. Under the FSA, Mr. Abney's mandatory minimum sentence would have been halved, from 10 years to five. *Id.*[3]

Several critical factual distinctions separate Mr. Abney's case from the one before the Court. Unlike Mr. Abney, Whitman was convicted more than eight months prior to the proposed Guidelines revision and had already requested, and received, a continuance of his sentencing hearing. Dkt. 202. Additionally, the Guidelines – unlike the FSA's mandatory minimums – are not binding on the court but are merely advisory, and where the trial court must begin its sentencing determination to ensure they are correctly calculated. *United States v. Siegelman*, 786 F.3d 1322, 1332 (11th Cir. 2016).

Petitioner couches the purported prejudicial effect of trial counsel's failure to request a third continuance in conclusory statements devoid of factual support. Whitman concedes that the Total Offense Level would remain at 43. Dkt. 489 at 26. But he asserts that because the Court's ultimate sentence of 264 months rested somewhere in Levels 38 or 39, any further reduction in the Total Offense Level would have netted an *additional* two levels of downward departure from the Guidelines, despite the Total Offense Level remaining at 43. "Either way," petitioner claims, "he would have gotten a significantly lower sentence." *Id.* But *Strickland* violations and evidentiary hearings for 2255 motions require more than a "conclusory statement, absent any reasonably specific facts." *Diaz v. United States*, 799 Fed. Appx. 685, 690 (11th Cir. 2020) (unpublished) (per curiam). Resting only upon conclusory statements as to how the Court might have responded to motion for a third continuance, when petitioner admits that the Total Offense Level would not have changed, does not pass muster on either prong for a claim of ineffective assistance of counsel at sentencing.  As such, no evidentiary hearing or further consideration of this claim is warranted.

---

[3] It was "at least reasonably probable" that the FSA would apply to those like Mr. Abney convicted before its enactment, advancing the ineffective assistance of counsel claim's merits. *Abney*, 812 F.3d at 1082.

2.  <u>Counsel's Objections to the PSR were not Constitutionally Ineffective</u>

The second new, and thus barred, ineffective assistance of counsel claim pertaining to sentencing rests on the PSR's calculation of legitimate profit. The PSR determined that Whitman should have received legitimate profit of $2,840,242, raising his Specific Offense Characteristic level to 22, opposed to 20.[4] Dkt. 214. Petitioner points to the PSR's finding that incorporating the legitimate profit into the total loss amount rested on guidance from Commentary Note 3 to USSG § 2C1.1, despite the Specific Offence Characteristic being driven by USSG § 2B1.1.

Commentary Note 3 lists its commentary as pertaining to "purposes of subsection (b)(2)" of § 2C1.1. But Commentary Note 3 lays bare the interrelationship between § 2C1.1 and § 2B1.1: "for purposes of subsection (b)(2), [loss] shall be determined in accordance with Application Note 3 of the Commentary to *§ 2B1.1*" (emphasis added). Because the Commentary instructs courts to calculate loss in a specific manner in § 2C1.1, it does not forbid the same court from factoring loss in a similar way per § 2B1.1 Moreover, trial counsel objected to the PSR's methodology for calculating what the profit should have been. *See* Dkt. 457-2 at 2-3. While Mr. Garland did not explicitly cite to Commentary Note 3, he did object to the PSR's methodology that went beyond the Forfeiture Agreement, methodology incorporating the legitimate profit that Whitman should have received. *Id.* Mr. Garland's lack of citation to § 2C1.1 does not alter the fact that trial counsel objected to the PSR's loss methodology, objections the Court rejected.

The Commentary to § 2B1.1 is instructive on the deference offered to the sentencing court. Application Note 3(C) directs the court to "only make a reasonable estimate of the loss." There is no language prohibiting the sentencing court from turning to guidance of other Application Notes

---

[4] The $2,840,242 puts Whitman over the $20,000,000 threshold for a 22-level increase for the Specific Offense Characteristic, totaling $21,296,644 in loss to the government. However, the PSR noted "that this figure is very conservative and draws many inferences in [Whitman's] favor." Dkt. 214 at 11.

to make its calculation, regardless of any potentially mistaken assertions by the PSR. Instead, "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence." USSG APPLICATION NOTE 3(C). Because of this, "the court's loss determination is entitled to appropriate deference." *Id.*

Petitioner failed to demonstrate how his trial counsel's lack of objection to the PSR's reference to Note 3 of § 2C1.1 warrants a finding of constitutionally defective representation at sentencing. In fact, the record is replete with trial counsel's numerous objections to the PSR, both in writing and orally at the sentencing hearing, including on this very calculation. *See* Dkt. 457-2 at 2-4, Dkt. 318 at 12-20. Because defense counsel's conduct at sentencing was not objectively unreasonable given his robust objections to the PSR, Whitman's ineffective assistance of counsel claim falls far short of constitutional defect.

### C. Petitioner's Claimed Conflicts of Interest Did Not Deprive Him of Constitutionally Guaranteed Representation

Petitioner claims that he was denied his Sixth Amendment right to effective counsel based on numerous unsupported claims of conflict of interest. As explained below, these ineffective assistance of counsel claims can be divided roughly into two groups, both devoid of substance and merit. Moreover, petitioner's purported expert based his opinions on counter-factual assumptions, which render them inapplicable.

Claims of ineffective assistance of counsel pertaining to a counsel's personal conflicts of interest are assessed under *Strickland v. United States*, 466 U.S. 668 (1984). *Mickens v. Taylor*, 535 U.S. 162, 174-75 (2002); *see supra* at 3-4.

#### 1. Conflict Claims Involving Garland and Margeson

Petitioner asserts purported self-dealing between counsels Garland and Margeson, alleging, without supporting evidence, that the sale of certain residential properties by Mr.

Margeson on petitioner's behalf (designed to shield them from possible seizure by the government) were delayed due to Mr. Garland's purported personal interest in them. Dkt. 489 at 11. However, these alleged conflicts between Mr. Garland and Mr. Margeson were not previously raised in petitioner's original brief. *See* Dkt. 450 at 15-21. Whitman's original brief only lamented certain legal fees directed towards Mr. Margeson and was devoid of any allegations of improper financial dealings between Messrs. Margeson and Garland. Yet, petitioner's Supplemental Memorandum proffers new and vague allegations of financial misdeeds and/or conflicts among counsel allegedly warranting relief. *Compare id.* at 15-16, *with* Dkt. 489 at 11-13. However, petitioner fails to provide any evidence to support this newly claimed scheme between counsel beyond conclusory statements and insinuations that Mr. Garland sought to purchase certain of petitioner's properties. As these are new claims, they are barred by the Court's December 1, 2020 Order. Even if the Court were to consider such claims, they are unsubstantiated and do not explain how these claims, if true, prejudiced petitioner and prevented him from receiving effective assistance of counsel at trial and on appeal. Accordingly, petitioner's claim fails to meet the standard under the second prong of *Strickland* and thus, no evidentiary hearing is warranted.

Petitioner also makes various claims against Mr. Margeson, accusing him of self-dealing regarding the sale of various Whitman-owned properties. Dkt. 489 at 11-13.  These claims echo those made in his initial brief, Dkt. 450 at 15-16, claiming that Mr. Margeson appropriated certain monies held in escrow for petitioner as attorneys' fees. Again, there is no record evidence to support these allegations against Mr. Margeson, nor is there any explanation of how this impacted Mr. Garland's representation of petitioner throughout the proceedings. Mr. Margeson's role was that of local counsel, never speaking on the record but merely observing the proceedings. It was Mr. Garland and the attorneys from his firm that represented petitioner throughout the proceedings

from pre-trial litigation through appeal. Assuming arguendo that such a self-dealing existed, petitioner is unable to demonstrate prejudice as required by the second prong of *Strickland*. Accordingly, the Court should disregard the claims of conflict of interest directed at Messrs. Garland and Margeson.

     2.   Purported Conflicts Involving Garland and Other Counsel did not Deprive <u>Petitioner of his Constitutionally Guaranteed Right to Effective Representation</u>

Petitioner also claims that Mr. Garland was further conflicted by certain strategic decisions he allegedly made and by recommending that Whitman retain Douglas Thompson to handle his criminal tax matters while also recommending that Whitman pay for the retention of Janice Singer-Capek to represent Whitman's assistant, Kelli Durham. Petitioner claims that these actions led to nonwaivable conflicts denying him effective assistance of counsel at trial and on appeal. These claims are also without merit.

     *a.*   *Legal Standard – Conflicts Involving Competing Client Interests*

If competing client interests exist for counsel, the movant must show "*first*, that his attorney had an actual conflict of interest, and *second*, that the conflict adversely affected counsel's performance." *Pegg v. United States*, 253 F.3d 1274, 1277 (11th Cir. 2001) (emphasis in original); *see also Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). The movant does not have to show that the trial's outcome would have been different, but instead rests on the demonstration of an adverse effect on counsel's performance. *Pegg*, 253 F.3d at 1277-78 (citing *McConico v. Alabama*, 919 F.2d 1543, 1548 (11th Cir. 1990)).

First, the movant must show an actual conflict of interest, *Cuyler*, 446 U.S. at 348, and must assert more than a mere "possible, speculative, or merely hypothetical conflict." *Reynolds v. Chapman*, 253 F.3d 1337, 1342-43 (11th Cir. 2001) (quoting *Lightbourne v. Dugger*, 829 F.2d 1012, 1023 (11th Cir. 1987)). The defendant needs to "point to specific instances in the record to

suggest an actual conflict or impairment of their interests." *Id.* at 1343 (quoting *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987)). Further, the movant must "demonstrate that the attorney made a choice between possible alternative causes of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remain(s) hypothetical." *Id.* (quoting *Smith*, 815 F.2d at 1404). If petitioner meets the first prong of the *Cuyler* analysis, he must still show the conflict "adversely affected counsel's performance." *Pegg,* 253 F.3d at 1277. To demonstrate adverse effect, the movant must prove: "(1) the existence of a plausible alternative defense strategy or tactic that might have been pursued; (2) that the alternative strategy or tactic was reasonable under the facts; and (3) a link between the actual conflict and the decision to forgo the alternative strategy of defense." *Id*. at 1278.

Even if a conflict for an attorney exists, it may be waived. *See United States v. Ross*, 33 F.3d 1507, 1524 (11th Cir. 1994) ("Even where an actual conflict exists subjecting the attorney to disqualification, the client may waive this conflict of interest and elect to have the attorney continue representation, so long as the waiver is knowing, intelligent, and voluntary."); *United States v. Garcia*, 447 F.3d 1327, 1337 (11th Cir. 2006). To hold a proper waiver, the defendant must "(1) [be] aware that a conflict of interest existed; (2) realized the consequences to his defense that continuing with counsel under the onus of a conflict could have; and (3) was aware of his right to obtain other counsel." *Garcia*, 447 F.3d at 1337 (quoting *Zuck v. Alabama*, 588 F.2d 436, 440 5th Cir. 1979)).

Petitioner's claim of ineffective assistance of counsel stemming from Mr. Garland's alleged joint meetings with petitioner and Ms. Durham, and from his subsequent recommendation that Whitman agree to waive any conflict with Ms. Singer-Capek's representation of Ms. Durham, are meritless. In order to best serve his client, Mr. Garland recommended that Whitman retain

experienced counsel, Douglas Thompson, to assist petitioner with his criminal tax matters. Mr. Garland also advised Whitman to help his assistant, Kelli Durham, obtain counsel because she too was a subject, and subsequently a target, of the government's investigation.

### b.    Not Unreasonable to Have Joint Meetings

In the early stages of defense counsel's investigation, Whitman claims he discussed the investigation with Mr. Garland in the presence of Ms. Durham and Ms. Singer-Capek. At the time of these alleged meetings, Ms. Durham was not a target of the government's investigation. Under the deferential standard of review offered to trial counsel, Mr. Garland was reasonable in conducting these joint meetings in order to ensure his client, the principal target of the investigation, was properly apprised of the facts and what courses of action Ms. Durham might pursue, and assess next steps that would best serve Whitman in future proceedings.

Petitioner also claims that Mr. Garland recommended that Ms. Singer-Capek represent Ms. Durham "so [he] could control her." Dkt. 450 at 20. Yet if this was the rationale for such a recommendation, it leads credence to the notion Mr. Garland was looking out for petitioner's best interests and not that of someone else.

### c.    No Prejudice from Joint Meetings

Under the second prong of *Cuyler*, as further defined in *Pegg*, petitioner must prove there was an adverse effect by defense counsel's deficient performance. *Pegg*, 253 F.3d at 1278. But defendant stops at bare assertions – that Ms. Durham learned information at these meeting that she shared with the government – failing to delve into any actual adverse consequences. Moreover, these assumptions form the basis for petitioner's purported expert's opinions. *See* Dkt. 489-12 at 4-7 ("As a direct result of Mr. Garland's decision to allow her attendance at those meetings, Ms.

Dunham [sic] was able to share this information with the government to be used against Mr. Whitman."). However, there is no evidence that either Ms. Durham or Ms. Singer-Capek shared any information derived from these alleged meetings with the government. Indeed, the only evidence before the Court on this subject, specifically the reports of interviews of Ms. Durham, her testimony at trial, and Ms. Singer-Capek's Affidavit demonstrate just the opposite. *See* Exhibits A & B, Dkt. 457-1 at 4. As reflected in her interview reports, Ms. Durham had an independent basis for the information she provided to the government, and they contain none of the laundry list of items that petitioner's purported expert assumed she shared with the government. *See* Dkt. 489-12 at 6. These incorrect "factual assumptions" formed the basis for his opinions, which are now rendered useless. Again, no harm resulted from any joint meetings as nothing from those meetings was shared with the government or used against Whitman at trial.

### d.  Singer-Capek/Thompson Conflict, Waiver Allegations

Petitioner has also asserted a meritless claim of conflict between Ms. Durham's counsel, Ms. Singer-Capek, and her officemate Mr. Thompson, who represented Whitman in tax-related matters outside the scope of these proceedings. As indicated above, Ms. Singer-Capek, a respected criminal defense attorney, was retained by Ms. Durham at Whitman's expense, on Mr. Garland's recommendation. From the outset, Ms. Singer-Capek made it clear that regardless of who paid her fees, her representation was directed solely to the best interests of Ms. Durham. Dkt. 457-1 at 2.

As detailed in her affidavit, Ms. Singer-Capek realized that an actual or potential conflict of interest existed when she learned that Mr. Thompson was representing petitioner and his family on criminal tax matters. *Id*. She immediately informed all parties of that fact out of an abundance of caution despite not having shared client confidences with Mr. Thompson. As the evidence before the Court demonstrates, Ms. Singer-Capek and Mr. Thompson are not traditional law

partners. *Id.* at 2-3. Holding "completely separate legal practices," the two attorneys merely share office space, do not comingle funds or share revenue, and there is no reciprocal access to client files. *Id.* at 2. Indeed, counsel never discussed their respective clients. *Id.* at 3.

Ms. Durham still wished to have Ms. Singer-Capek continue her representation and waived any potential conflict. Whitman, after consulting with Mr. Garland, also waived any potential conflict of interest with his tax counsel, Mr. Thompson. *See id.* at 7 ("I have read the contents of this letter and I understand it fully. I know of the conflicts and the dangers. I have also consulted with separate counsel and after so doing, hereby waive any and all conflicts, agree to be responsible for Ms. Durham's legal fee and request that with the exception of Janice Singer-Capek, Thompson & Singer, P.A., its successors and [sic] assigns and specifically Douglas R. Thompson and Baxter Thompson continue representing me in the tax matters for which they have been retained.").

Whitman now claims that Mr. Garland acted out of impermissible self-interest when he failed to advise petitioner against signing the subject waiver. However, Mr. Garland was acting well within the bounds of reasonableness by purportedly recommending that Whitman continue to retain Mr. Thompson for his tax matters while also agreeing to Ms. Singer-Capek's continued separate representation of Ms. Durham. While Whitman now claims he did not have independent counsel to advise him on any potential conflict, it does not change the fact that his waiver was knowing and voluntary, or the fact that he signed to the contrary. Dkt. 489 at 10; Dkt. 457-1 at 7.

Subsequent proceedings proved there was no harm to Whitman. Petitioner's claim stems from Ms. Singer-Capek's supposed opportunity to use privileged information about petitioner against him in her representation of Ms. Durham. As indicated above, that never happened. Moreover, Ms. Singer-Capek and Mr. Thompson never had access to each other's client files due to separate servers, nor did they share privileged or confidential information about their respective

clients. Under the second prong of *Cuyler*, a petitioner must prove there was an adverse effect by counsel's deficient performance. *Pegg*, 253 F.3d at 1278. Because there was no harm from Ms. Singer-Capek and Mr. Thompson's association, petitioner's conflict of interest claim falls short.

### e.   GA Rules of Professional Conduct Were Not Broken

Counsel's purported expert seeks to vitiate Whitman's knowing waiver of any conflict through a misconstrued interpretation of the Georgia Rules of Professional Conduct. Georgia Rule of Professional Conduct 1.7(b) allows for representation of a conflicted party with informed consent. As such, petitioner's claims of nonwaivable conflicts fall flat. The first exception to a knowing waiver petitioner cites, Rule 1.7(c)(2), forbids waiver when there is an "assertion of a claim by one client against another client represented by the lawyer in the same or substantially related proceeding." GA. RULES OF PROF'L CONDUCT 1.7(C)(2). Whitman obfuscates his responsibility to assert support for an actual conflict on Mr. Garland's part – the target of the claim – when he has no former or concurrent client related to this matter. Because Mr. Garland holds no other conflict, any claim related to Rule 1.7(c)(2) is of no moment.

Next, petitioner turns to Rule 1.7(c)(3), which forbids waivers when it "involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients." GA. RULES OF PROF'L CONDUCT 1.7(C)(3). Here, there is no indicia of evidence that Mr. Garland was unable to provide anything less than zealous advocacy in his representation of petitioner. Mr. Garland made a tactical decision advising Whitman to assist retaining well-regarded defense counsel for his assistant, Ms. Durham, as they prepared to defend against the government's investigation. The fact that Ms. Durham's counsel was an officemate of Whitman's tax attorney – whom Mr. Garland also recommended Whitman retain – falls far short of creating a non-waivable conflict of interest. Further, even if such a conflict

18

did exist, Whitman was properly apprised of the matter when offered Ms. Singer-Capek's waiver letter, regardless of what Mr. Garland may have advised. As explained above, Mr. Garland was not himself conflicted under Georgia Rule 1.7 as alleged by petitioner, *see* Dkt. 489-12 at 11-12, because Ms. Durham never shared any "confidential information" with the government that she may have been privy to in meetings with Whitman and his defense counsel. S*ee supra* at 16.

Even if the Court was to find a conflict of interest on either Mr. Garland's part or that of one of the other counsel based on Georgia's Rules of Professional Conduct, this is not *per se* evidence of a proper ineffective assistance of counsel claim. Looking to "the *Strickland* standard," the U.S. Supreme Court has held that a "breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of conduct," noting how canons of ethics may require conduct of attorneys beyond the pale required for a showing of constitutional deficiency. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986). *See also United States v. Teague*, 953 F.2d 1525, 1536 (11th Cir. 1992) (*en banc*) (Edmondson, J., concurring in the result) (concurrence citing *Nix* for proposition that "breach of ethical standard does not necessarily constitute denial of Sixth Amendment guarantee of assistance of counsel"); *see also United States v. Nickerson*, 556 F.3d 1014, 1019 (9th Cir. 2009) ("[W]e hold that an attorney's violation of a rule of ethics or professional conduct before trial does not constitute *per se* ineffective assistance of counsel."). Mr. Garland, a well-regarded member of the Georgia Bar, did not violate Georgia Rule of Professional Conduct 1.7 in his representation of Whitman. Further, under these facts, even a breach of Rule 1.7 still fails to provide an adequate showing of any adverse effect on Mr. Garland's zealous advocacy on behalf of his client.

### D.    Petitioner's Conclusory Allegations do not Merit an Evidentiary Hearing

With a motion to vacate pursuant to 28 U.S.C. § 2255(a), the petitioner is only awarded an evidentiary hearing if he can "'allege[] facts that, if true, would entitle him to relief.'" *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002)). The petitioner "'need only *allege* – not prove – reasonably specific, non-conclusory facts that, if true, would entitle him to relief.'" *Id.* (quoting *Aron*, 291 F.3d at 715 n.6) (emphasis in original). But, the court "need not hold a hearing if the allegations are 'patently frivolous,' 'based upon unsupported generalizations,' or 'affirmatively contradicted by the record.'" *Id.* (quoting *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989)).

Taken as true, none of petitioner's claims – many of which are barred for only now being raised, *see* Dkt. 479 – rise to the high threshold for a claim of ineffective assistance of counsel. Petitioner rests on conclusory, and often counter-factual, allegations in asking this Court for an unnecessary evidentiary hearing. "When claims for habeas relief are based on unsupported generalizations, a hearing is not required." *United States v. Jones,* 614 F.2d 80, 82 (11th Cir. 1980) (quoting *Scott v. United States*, 598 F.2d 392, 393 (5th Cir. 1979) (per curiam)). Because Whitman's claims rest on unsupported generalizations, incorrect facts and claims barred from consideration, an evidentiary hearing is neither appropriate nor necessary in this matter.

## <u>CONCLUSION</u>

Petitioner has failed to provide a factual or legal basis to support his claims for collateral relief beyond unsupported generalizations and purported expert opinions based on inaccurate assumptions in pursuit of an evidentiary hearing. Accordingly, Whitman's motion to vacate his conviction should be denied in its entirety without an evidentiary hearing.

DATED: March 24, 2021                    Respectfully submitted,

COREY R. AMUNDSON,
Chief, Public Integrity Section
Criminal Division
United States Department of Justice

/s/ *Richard B. Evans*
RICHARD B. EVANS
Trial Attorney
Public Integrity Section
Criminal Division
United States Department of Justice
1331 F Street NW, 3rd Floor
Washington, DC 20004
Richard.B.Evans@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2021, I caused a copy of the foregoing pleading to be filed via ECF and thereby served on counsel of record for all parties.

/s/ <i>Richard B. Evans</i>
Trial Attorney
Public Integrity Section
Criminal Division
United States Department of Justice
